IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BERNARD D WILSON,

    Plaintiff,

v.                                        CASE NO. 5:12-cv-13-MP-GRJ

SGT. TIMOTHY DAWSON and
SGT. JOANNA PALMER,

    Defendants.

_____/

**ORDER AND**
**REPORT AND RECOMMENDATION**

Plaintiff initiated this case by filing a *pro se* civil rights complaint under 42 U.S.C § 1983, and has been granted leave to proceed as a pauper. Plaintiff is proceeding pursuant to a third amended complaint, Doc. 30.[1] Plaintiff alleges that Defendants failed to protect him from an assault by another inmate. This case is presently before the Court on the parties' cross-motions for summary judgment, Docs. 70 and 78. Plaintiff has also filed a motion for leave to amend his response to Defendant's motion, to include additional affidavits. Doc. 97. The Court finds that such leave to amend should be granted. For the following reasons, the undersigned recommends that Plaintiff's motion for summary judgment, Doc. 70, be denied and that Defendants' motion for summary judgment, Doc. 78 be granted and this case dismissed.

**Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary

---

[1] The third amended complaint asserts claims against nine defendants. The Court dismissed seven of the nine named defendants, and the case proceeded only against Defendants Dawson and Palmer. Doc. 67.

judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party." *Samples on Behalf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). "In determining whether summary judgment is appropriate, [the Court is] required to draw all reasonable inferences in favor of the non-moving party, not all *possible* inferences." *Horn v. United Parcel Services, Inc*. 433 F. App'x 788, 796 (11th Cir. 2011) (emphasis added).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

The Eleventh Circuit has noted that

> [i]t is well settled that "after adequate time for discovery and upon motion, [summary judgment is appropriate] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, in response to a motion for summary judgment, a nonmoving-plaintiff must present evidence in support of his allegations sufficient to raise a

> genuine issue of material fact regarding each element of his claim.  As established in *Celotex,* it is not necessary for the party moving for summary judgment to introduce any evidence at all in order to prevail on his motion.  Rather, in cases in which the nonmoving party will bear the burden of proof at trial, the movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him. *Id.* Where the nonmoving party fails to present such evidence, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

*Maxi-Taxi Of Fla., Inc. v. Lee County Port Auth., 3*01 F. App'x 881, 885 (11th Cir. 2008). Where the nonmoving party bears the burden of proof, he must offer more than a mere "scintilla of evidence" in support of his position.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

## Allegations of Complaint

The complaint stems from an incident that occurred while Plaintiff was confined at Gulf Correctional Institution.  Plaintiff alleges that he provided prison officials with information implicating another inmate, Hooper, in a prison murder, and cooperated in an investigation.  He contends that beginning in July 2011 prison officials ignored his requests for protective custody or affirmatively subjected him to a risk of harm by identifying him as a "snitch."   Specifically, Plaintiff alleges that Sgt. Dawson identified him as a "snitch" in front of other inmates and intentionally placed inmates associated with Hooper's gang in Plaintiff's cell, including inmates who were "known for fighting," in an effort to have Plaintiff harmed.  Doc. 30.

On September 6, 2011, Dawson placed Harrell in Plaintiff's cell.  Plaintiff alleges that Harrell was known to be violent and was placed in disciplinary confinement for

battery on a staff member, and that Dawson was aware that Harrell was affiliated with Hooper. Harrell allegedly told Plaintiff that Hooper told Harrell to attack Plaintiff if he did not recant his statement. Plaintiff alleges that he informed Defendant Palmer of Harrell's threat to harm him at an unrelated disciplinary proceeding. Palmer refused to move Plaintiff to a different cell. *Id*.

On September 18, 2011, Plaintiff and Harrell fought in their cell, resulting in the use of chemical agents to stop the fight. Plaintiff alleges that he suffered injuries as a result of Harrell's "assault," although Plaintiff was charged with a disciplinary violation for fighting as a "coverup." Plaintiff avers in his sworn complaint that as a result of the assault by Harrell he suffered "numerous abrasion, laceration, and a broken nose and facial damage, post-traumatic stress disorder . . . . As a proximate cause of the defendants' neglect and displaying of deliberate indifference, Plaintiff suffered unnecessary physical and psychological pain (i.e., broken nose, loosened teeth, facial swelling and minor bruising)" and that such injuries "violated 'contemporary standards of decency.'" Doc. 30. Plaintiff alleges that Defendants Dawson and Palmer violated his constitutional rights by failing to protect him from Harrell. For relief, Plaintiff seeks $500,000 in punitive damages from each Defendant, $500,000 in "permenant" [sic] damages from each Defendant, compensatory damages in the amount of $1,000,000, and an injunction preventing his confinement within a five hour radius of Gulf C.I. The Complaint does not assert a claim for nominal damages. Doc. 30.

### Plaintiff's Rule 56(e) Evidence

In support of his summary judgment motion, Doc. 70, Plaintiff submits copies of grievances and responses asserting his fear of harm by other inmates as a result of the

Hooper investigation. On September 3, 2011, Plaintiff submitted an informal grievance alleging threats against him by unnamed staff members. The grievance was forwarded to the Inspector General's office for review. Doc. 74 (amended summary judgment motion attaching Plaintiff's Exhibits A and B). On September 3, 2011, Plaintiff also submitted a formal grievance to the DOC Secretary alleging that Dawson had placed inmates in his cell to attack Plaintiff. The grievance did not mention Harrell or express any specific fear regarding Harrell. The grievance was returned without action because Plaintiff did not submit it first at the institutional level, although it was also forwarded to the Warden. *Id*. After the incident with Harrell, Plaintiff submitted a grievance alleging that Harrell attacked him because of Plaintiff's involvement in the Hooper investigation and that Dawson had intentionally placed Harrell in the cell to facilitate an attack. Doc. 70, Exhibit C.

### Defendants' Rule 56(e) Evidence[2]

According to the affidavit of Sgt. Dawson, he was unaware that Harrell was affiliated with Hooper, and did not know that Plaintiff was in fear of retaliation from Hooper or Harrell. If he had known that Harrell and Hooper were affiliated and that Plaintiff was in fear of retaliation from them, he would not have placed Harrell in Wilson's cell. Moreover, Plaintiff never asked Sgt. Dawson to be placed in protective management. If Plaintiff had asked for protective custody, Sgt. Dawson would have immediately had him fill out and sign a form requesting protective management, and

---

[2]Defendants did not file a separate response to Plaintiff's summary judgment motion. Because Defendants' motion and evidence address all of the matters raised in Plaintiff's motion, the Court will construe Defendants' motion as a response in opposition.

*Case No: 5:12-cv-13-MP-GRJ*

Plaintiff would have been immediately moved to an administrative confinement/protective management cell pending an investigation of his request for protective management. Doc. 78, Exh. B.

On September 8, 2011, Plaintiff had a disciplinary hearing for an unrelated disciplinary report. Sgt. Palmer was one of the team members at the disciplinary hearing. Sgt. Palmer does not recall the disciplinary hearing with Plaintiff; however, she avers that if Plaintiff had told her that he was afraid of his cellmate, she would have written an incident report and initiated Protective Management procedures, even if she did not find Plaintiff's statement to be credible. *Id*. Exh. C. She did not write an incident report or initiate Protective Management procedures; therefore, Plaintiff must not have told her he was in fear of harm from his cellmate. *Id*.

On September 18, 2011, Plaintiff and Harrell fought with each other in their cell. *Id*. Exh. D. Chemical spray was used to break up the fight. After being decontaminated, Plaintiff was taken to the infirmary for an examination. The assessment reflects that he had a 1.5 inch "scratch" on his right cheek, a two millimeter open area (abrasion) to his right shoulder, and a one centimeter open area (abrasion) on his right wrist. No bleeding was noted, and the physician was not notified. The only treatment provided was "eyes flushed," apparently as a consequence of the chemical spray. *Id*. Exh. F-I.

On October 26, 2011, after being transferred to Calhoun CI, Plaintiff presented at sick call stating that he needed an x-ray of his left cheek and left elbow because he "was attacked" on September 18. The examination noted no numbness, no tingling, Plaintiff was able to move the affected extremity, there was no swelling, no deformity,

no abrasion or laceration.   It was determined that Plaintiff's examination was "normal" with no treatment indicated.   *Id*. Exh. H.

The exhibits documenting the investigation into the use of force reflect that Officer Brock observed Plaintiff and Harrell "grappling" and yelling at each other.  The inmates disregarded verbal orders to stop, resulting in the use of chemical spray.  Officer Brock's Incident Report documents that both inmates exhibited aggressive stances toward each other.  According to Brock's report, after being told to cease their disruptive behavior "both inmates began striking each other in the head and chest areas with closed fists."  *Id*. Exh. J.   After the fight was quelled with chemical spray, both inmates received a medical assessment "with no injuries noted."  *Id*. Exh. I, J.  The report does not reflect that Plaintiff made any statements that Harrell instigated an attack on him, or that the incident was in any way connected to the Hooper investigation or any relationship between Harrell and Hooper.  The report reflects that both inmates would receive disciplinary reports for fighting.  *Id*. Exhibits I-J.

According to the declaration of Otis Harrell, DOC #T17556, made under penalty of perjury pursuant to 28 U.S.C § 1746, no corrections officer asked him to harm Plaintiff in any way.  Harrell got in a fight with Plaintiff because their cell "was a mess and the officers were coming around to do an inspection.  We disagreed about cleaning up the cell.  So we fought."  Harrell avers that he knew about the murder investigation of Hooper, but did not know that Plaintiff was involved in the investigation.  Harrell did not fight with Plaintiff because Hooper asked him to or to retaliate against Plaintiff; "[w]e fought because of the cell needing to be cleaned up, and that's it.  *Id*. Exh. D.

The Defendants also submit excerpts of Plaintiff's deposition transcript.  Plaintiff

*Case No: 5:12-cv-13-MP-GRJ*

admitted that two inmates he alleged were placed in his cell by Dawson to harm him, Inmate Lugo and Inmate West, never threatened or harmed him.  After being placed in Plaintiff's cell on September 6, Harrell tried to persuade Plaintiff to change his story regarding Hooper, but never assaulted him until September 18.  Plaintiff testified that his injuries included "a hickey on my head," "numerous lacerations of my arms, my neck, my hand, my face," facial swelling, and "nerve damage."  He testified that he assumed his nose was broken because it was bleeding, but he was never diagnosed with a broken nose.  *Id* Exh. E.

In view of this evidence, Defendants argue that Plaintiff had no more than a de minimus injury following the fight with Harrell, and therefore that Plaintiff's claims are limited to, at most, nominal damages and his claims for compensatory and punitive damages should be dismissed pursuant to 42 U.S.C § 1997e(e).  Defendants also argue that Plaintiff has provided insufficient evidence to sustain a claim for deliberate indifference to his safety.  Defendants argue that Palmer and Dawson were unaware of any risk posed by Harrell, and that Harrell fought with Plaintiff because of a dispute over cleaning the cell, and not because of Plaintiff's participation in the Hooper investigation.  Doc. 78.

### Plaintiff's Opposition to Summary Judgment

In opposition to Defendants' summary judgment motion, Plaintiff states that his Complaint is based on Defendants' alleged failure to address "imminent" harm to him by other inmates and that he "never based his claim solely upon Otis Harrell, as defendants claim."  Doc. 94 at 2.  Plaintiff argues that "Defendants attempt to construe Plaintiff's claim solely around Harrell, and his fear of. [sic] This strategy applied by the

Defendants would give them an arguable case and place an insurmountable burden on the Plaintiff making it difficult for him to prove otherwise." *Id*. at 6.  Plaintiff concedes that "at no time prior to this assault, besides the Sept. 8 2011 informing Palmer at D.R. hearing, does Plaintiff even mention Harrell," because Harrell was not a threat until he was placed in Plaintiff's cell. *Id*. at 13.

Plaintiff disputes the relevance of Defendants' argument that Plaintiff exhibited only de minimus injuries after the fight, stating the Plaintiff "could have been fatally injured at any time that he wasn't afforded protection."  Plaintiff argues that Harrell had a propensity for violence, and that his "unsworn" declaration should be discredited because "clearly no 'hitman' will admit to being a 'hitman'[.]" *Id*. at 5.

Plaintiff submits an unnotarized statement purportedly from inmate Fredrick Brown, DC #Y04290.  Doc. 94 at 26-27 (Exh. D).  Brown states that he overheard staff members, including Dawson, referring to Plaintiff as a "snitch."  Brown states that he heard Dawson tell Harrell, in Plaintiff's presence, to "make sure you beat that ass real good and I'll give you some extra trays."  The statement does not indicate when Dawson's alleged threat occurred.  Brown says that Harrell spoke with him through the cell vent and told Brown to watch for the police because he was about to "whip his cellmate's ass."  Brown later heard Plaintiff "screaming for help and crying." *Id*.

Plaintiff also submits his own affidavit that essentially reiterates the allegations in his Complaint.  Plaintiff again asserts that as a consequence of the fight with Harrell he suffered "a fractured/broken nose, which I was denied medical treatment for, numerous lacerations, bruises, swelling in different areas, and damage to my eyes due to being sprayed with pepper spray." *Id*. Exh. E.

In his motion for leave to amend his summary judgment response Plaintiff submits affidavits from his mother and aunt stating that in August and September 2011 they communicated with prison officials to express concern for Plaintiff's safety. Doc. 97.

## Discussion

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)) (omission in original). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. For a prison official to be constitutionally liable for failing to protect the safety of an inmate, the prisoner must produce "sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that harm; and (3) causation." *Id.* (quoting *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995)). Deliberate indifference requires a showing that the defendant official "must have been 'subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind." *Id.* (quoting *Farmer*, 511 U.S. at 834-38) (internal quotations omitted).

For a prison official to be liable for failure to protect an inmate, "there must be much more than mere awareness" that the attacker is a "'problem inmate' with a well-documented history of prison disobedience" and a propensity to violence. *Carter*, 352 F.3d at 1349. The official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official

must also 'draw that inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). A "generalized awareness of risk" that an inmate is problematic "does not satisfy the subjective awareness requirement," because "merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id.* at 1350 (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)).

Further, "compensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated." *Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000). Pursuant to 42 U.S.C. § 1997e(e), in order to recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate a physical injury. In *Harris v. Garner*, 216 F.3d 970, 974 (11th Cir.2000), the Eleventh Circuit fused the physical injury analysis under § 1997e(e) with the framework set out by the Supreme Court in *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), for analyzing prisoner civil rights claims. *Harris v. Garner*, 190 F .3d 1279 (11th Cir.1999), *vacated by* 197 F.3d 1059 (11th Cir.1999), *and reinstated in relevant part by* 216 F.3d 970 (11th Cir. 2000). Thus, in order to satisfy section § 1997e(e), a prisoner seeking monetary damages for mental or emotional injury must demonstrate more than de minimus "physical injury." *Harris*, 190 F.3d at 1286-87; *See also Osterback v. Ingram*, 2000 WL 297840 (N.D.Fla.), aff'd 263 F.3d 169 (11th Cir.2001) (table decision), cert. denied, 536 U.S. 906 (2002).[3]

---

[3]This is not an excessive-force case, in which the focus is on the need for the force applied and whether the force was applied maliciously or sadistically for the very purpose of causing pain. In such a case, an injury that is only de minimus might nevertheless be sufficient to withstand summary judgment.

In this case, the undisputed medical records and incident reports that are contemporaneous to the fight with Harrell clearly reflect that Plaintiff suffered no compensable injury because the examination immediately after the fight revealed only a small scratch and two smaller abrasions that necessitated no medical treatment whatsoever. *See* Doc. 78, Exh. F-I. Plaintiff has produced not one scintilla of medical evidence in support of his claim that he experienced "psychological pain" or otherwise suffered any physical injury as a result of actions allegedly taken by the Defendants.

Plaintiff's self-serving and unsupported claims of psychological pain and extensive injuries, including a broken nose and loosened teeth, are wholly at odds with the record evidence. Where the "Plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the Plaintiff's account." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). Further, the Eleventh Circuit has held where a plaintiff only submits a "conclusory allegation, unsupported by any physical evidence, medical records, or corroborating testimony of witnesses ... [they] discount it" and it is insufficient to defeat a motion for summary judgment. *Bennett v. Parker*, 898 F.2d 1530, 1533-34 (11th Cir. 1990).

Accordingly, on this record, the Court finds that Plaintiff's claim for compensatory and punitive damages for physical injuries and for emotional and mental suffering is foreclosed. *See Harris* 190 F.3d at 1286 (concluding that a "dry shave" was not the kind of physical injury cognizable under § 1997e(e)); *see also e.g., Quinlan v. Pers.*

*Transp. Servs Co.*, 329 F. App'x 246, 249 (11th Cir. June 5, 2009) (concluding that temporary chest pain, headache, difficulty breathing and periodic episodes of back pain, none of which required immediate medical attention or evidenced physical injury besides discomfort, did not surmount § 1997e(e)'s bar).

In an appropriate case, a plaintiff may recover nominal damages "if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003) (citation omitted). Thus, a prayer for nominal damages is not precluded by § 1997e(e). *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir.2007). In this case, Plaintiff has made no claim for nominal damages. Doc. 30. Although Plaintiff has made no such claim, the Court must consider whether the *pro se* Complaint should be liberally construed to request nominal damages. *See Williams v. Brown,* 2009 WL 2883496 *5 (11th Cir. 2009) (remanding to district court for determination whether complaint should be construed as requesting nominal damages) (citing Fed.R.Civ.P. 54(c) ( "Every other final judgment [besides default judgment] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.")).

In the present action, Plaintiff requests specific monetary damages of $500,00 from each Defendant for punitive damages, $500,000 from each Defendant for "permenant" [sic] damages, and $1,000,000 in compensatory damages, in addition to injunctive relief limiting where he may be incarcerated. Doc. 30. Plaintiff's damages requests are construed by the Court to be requests for compensatory and punitive damages inasmuch as he wants to be compensated for his alleged psychological and

physical injuries.  Such claims are inconsistent with a request for nominal damages.  *See Carey v. Piphus*, 435 U.S. 247, 266–67 (1978) (holding if plaintiffs were entitled to nominal damages for the mere violation, the damages should not exceed one dollar); *Qualls v. Santa Rosa County Jail*, 2010 WL 785646, at *3 n. 1 (N.D.Fla. Mar. 4, 2010) (unpublished) (dismissing the plaintiff's complaint as it "cannot be liberally construed as requesting nominal damages, because he specifically requested only $250,000 in compensatory and/or punitive damages").  Particularly in light of the extreme contradiction between Plaintiff's unsupported allegations of serious injury and the summary judgment evidence reflecting *no* treatable injury, and Plaintiff's clear efforts to link alleged injuries with specific dollar amounts, the Court declines to construe the Complaint as alleging a claim for nominal damages.[4]

Even if Plaintiff's case could proceed on a claim for nominal damages, he has failed to establish the necessary elements of a failure-to-protect claim even viewing the evidence in a light most favorable to Plaintiff.  In the face of Defendants' summary judgment evidence that Defendants were unaware that Harrell posed any risk of harm to Plaintiff, Plaintiff argues that his claims are *not* premised on a specific risk posed by Harrell but rather on a generalized fear of "imminent harm" posed by other inmates due to his involvement in the Hooper investigation, of which Defendants allegedly were aware.  Doc. 94 at 2, 6.  A "generalized awareness of risk" that an inmate is problematic "does not satisfy the subjective awareness requirement," because "merely negligent

---

[4]The Court has no authority to grant Plaintiff the injunctive relief he requests, which would preclude the DOC from housing Plaintiff within a five-hour radius of Gulf CI.

*Case No: 5:12-cv-13-MP-GRJ*

failure to protect an inmate from attack does not justify liability under section 1983." *Carter*, 352 F.3d at 1349 1350 (quoting *Brown*, 894 F.2d at 1537).

Moreover, on this record the Court concludes that Plaintiff has failed to establish the necessary final element of a failure-to-protect claim: causation. To prove causation, the plaintiff must show the "defendant [prison official's] participation in the alleged wrong." *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986); *see Williams v. Treen*, 671 F.2d 892, 900 n. 15 (5th Cir. 1982) ("In order to establish the personal liability of a given defendant, the plaintiffs must show that a particular official's actions (or inaction) caused a violation of the plaintiff's rights."). The causation element manifests itself in two links. *Hale*, 50 F.3d at 1584; *see LaMarca v. Turner*, 995 F.2d 1526, 538–39 (11th Cir. 1993). First, the plaintiff must demonstrate (1) a link between defendants' allegedly deliberately indifferent acts and omissions, and the excessive risk of violence; and (2) a link between the excessive risk of violence and Plaintiff's injury. *Hale*, 50 F.3d at 1584. To prove these two connections, the plaintiff must do more than "merely show[ ] ... [that the defendant prison] official had the means to correct a constitutional infirmity." *Hale*, 50 F.3d at 1581; *see Doe v. Sullivan County*, 956 F.2d 545, 550 (6th Cir.) ("[M]ore is required than [a] naked assertion that the assault would not have occurred but for the offensive [prison] conditions. To hold otherwise would effectively transform the causality requirement from a substantive element of proof into one of pleading."), *cert. denied*, 506 U.S. 864 (1992); cf. *Trotter v. Peters*, 1995 WL 117906, at *5 (N.D.Ill. Mar.15, 1995) (" '[p]risons are dangerous places' and a certain degree of violent behavior is unavoidable"), *aff'd*, 106 F.3d 403 (7th Cir.1997).

In this case, the undisputed summary judgment evidence submitted by

Defendants in the form of the prison's incident reports and medical records reflects that the very minor injuries that Plaintiff incurred were the result of a garden-variety scuffle between cellmates, attributed to a dirty cell by Harrell, and not to Harrell's actions as an alleged "hitman" – in Plaintiff's words – for prison officials or other prisoners.   The incident reports document that *both* inmates were fighting, not that Harrell was an aggressor and Plaintiff a victim, and it was necessary to apply chemical spray to *both* inmates to break up the fight.   Plaintiff received a disciplinary charge for fighting according to the incident reports, and Plaintiff has come forward with no evidence showing that he was not held culpable in the incident.  Moreover, rather than establishing any failure to protect Plaintiff from harm, the incident reports establish that officers intervened immediately to stop the fight, a factor which, on this record, strongly suggests that the intervention of the officers prevented Plaintiff from being injured or from injuring Harrell.

The Court is mindful that in deciding whether summary judgment is warranted, the Court must view the evidence in the non-movant's favor, but only to the extent that it would be reasonable for a jury to resolve the factual issues that way.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (to defeat summary judgment "there must be evidence on which the jury could reasonably find for the plaintiff"); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir.1999) ("[T]here must be sufficient evidence on which the jury could reasonably find for the plaintiff ...."). "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir.1988) ("The summary judgment standard requires that we resolve all reasonable doubts in

favor of the non-moving party, but it does not require us to resolve *all* doubts in such a manner." Thus, while Plaintiff's statements and evidence provide facial support for his claims, in view of the records documenting how the fight occurred and the absence of any injury to Plaintiff, a reasonable jury could not find that Defendants' actions were sufficiently linked to the scuffle with Harrell such that Plaintiff suffered a constitutional deprivation that is attributable to Defendants.

In light of the foregoing, it is **ORDERED** that Plaintiff's motion to amend his summary judgment response, Doc. 97, is **GRANTED.**

It is respectfully **RECOMMENDED** that Plaintiff's motion for summary judgment, Doc. 70, should be **DENIED**, and that Defendants' motion for summary judgment, Doc. 78, should be **GRANTED**.

**IN CHAMBERS** at Gainesville, Florida this 23rd day of February 2015.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**
A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.